UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:14-cr-00140-JAW |
| | ) | |
| FRANK CURTIS | ) | |

**ORDER ON RENEWED MOTION FOR COMPASSIONATE RELEASE**

An incarcerated individual moves for compassionate release to home confinement and a period of supervised release under 18 U.S.C. § 3582(c)(1)(A)(i) after exhausting his administrative remedies. Because the Court determines that he has not put forward extraordinary and compelling reasons justifying his release, the Court denies his request.

**I.  PROCEDURAL BACKGROUND**

   **A.  Case No. 1:14-cr-00140-JAW**

On November 9, 2015, the Court sentenced Frank Curtis to eighty months of imprisonment, three years of supervised release, and a $100 special assessment for possession with the intent to distribute cocaine and oxycodone, a violation of 21 U.S.C. § 841(a)(1). *Min. Entry* (ECF No. 46); *J.* (ECF No. 47). On May 14, 2020, Mr. Curtis filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). *Emergency Mot. for a Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)* (ECF No. 55) (*Def.'s Mot.*). On May 22, 2020, the Government responded in opposition. *Gov't's Opp'n to Def.'s Mot. for Compassionate Release* (ECF No. 59) (*Gov't's Opp'n*). On May 26, 2020, Mr. Curtis replied. *Def.'s Reply Mem.* (ECF No. 60) (*Def.'s Reply*).

### B. Case No. 2:19-cr-00072-JAW[1]

On April 12, 2019, while serving his term of imprisonment in case number 1:14-cr-00140-JAW, Mr. Curtis was indicted for one count of mail fraud under 18 U.S.C. § 1341 and one count of conspiracy to commit mail fraud and make materially false statements in a matter within the jurisdiction of the Bureau of Prisons (BOP) in violation of 18 U.S.C. § 371. *Indictment* (ECF No. 1). The object of the conspiracy was for Mr. Curtis to fraudulently gain admission to the Residential Drug Abuse Program (RDAP) at the BOP facility in Estill, South Carolina, thereby securing Mr. Curtis an opportunity to earn early release from his term of imprisonment. *Id.* at 6. Mr. Curtis pleaded guilty to the conspiracy count on December 16, 2019. *Min. Entry* (ECF No. 32). He awaits sentencing in this case.

## II. POSITIONS OF THE PARTIES

### A. Frank Curtis' Motion

Mr. Curtis begins his motion by requesting that the Court "re-sentence him to a sentence of imprisonment of time-served or, alternatively, a sentence of time-served followed by a term of supervised release not to exceed the balance of his original prison sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) . . .." *Def.'s Mot.* at 1. He lays out relevant background on the COVID-19 pandemic and its effect on BOP facilities, *id.* at 1-3, before turning to the Court's authority to grant the relief he seeks. *Id.* at 3-4.

---

[1] Within this subsection of the Court's order, the Court's references to docket numbers are to docket number 2:19-cr-00072-JAW.

2

Mr. Curtis then turns to the heart of his argument that he has shown extraordinary and compelling reasons for the Court to alter his sentence. Mr. Curtis states that "[i]n early 2019, while he was being held in custody at DCI Estill, a BOP facility in Estill, South Carolina, Mr. Curtis was given by BOP a release date in November, 2020," and was "subsequently given approval for a release to a halfway house as of May 8, 2020." *Id.* at 4. He states that "[o]n April 12, 2019, [he] was indicted in 2:19-CR-72-JAW by a grand jury in this district" and was "transferred from South Carolina to the Strafford County Jail, Dover, New Hampshire," where he continues to be housed. *Id.* Mr. Curtis continues that "[w]hen the First Step Act was enacted, [his] release date in this case was revised to September 19, 2020" but that "[i]t does not appear . . . that his halfway house date was similarly revised," as if it had been, his "halfway house date would have happened in March 2020." *Id.* Mr. Curtis states that it "appears likely [he] will not be released to go to a halfway house despite his eligibility and he will be forced to remain in BOP custody until his August release date." *Id.* at 5.

Mr. Curtis next asserts that he has complied with the statutory exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A). *Id.* at 5-7. He acknowledges that "[a]side from the risk posed to him by being in an incarcerated population at the time of a global pandemic, Mr. Curtis does not claim to have any special health factors which would support this request." *Id.* at 7. However, he argues that the Court should grant him relief nonetheless because the Court is not required to find that Mr. Curtis suffers from severe medical issues to grant him compassionate release; he is not a

3

danger to the safety of any other person or the community, has used his time while incarcerated to improve himself through substance abuse classes and courses on trade skills, and "has a reentry plan absent release to a halfway house that includes a job with a construction company;" he has only four months remaining on an eighty-month sentence; and it is unclear when he will be returned to BOP custody, and therefore when he can be evaluated for release to a halfway house. *Id.* at 7-11.

### B.   The Government's Opposition

The Government argues that Mr. Curtis' motion should be denied. It states that it "does not challenge [Mr. Curtis'] exhaustion of administrative remedies" but that Mr. Curtis "concedes that he has no medical basis for his compassionate release request."[2] *Gov't's Opp'n* at 1 & n.1. The Government argues "COVID-19 is simply

---

[2]   The Court has previously ruled that the exhaustion provision of 18 U.S.C. § 3582(c)(1)(A) is mandatory, but it has not yet decided whether that exhaustion provision is jurisdictional. *See United States v. Lugo*, No. 2:19-cr-00056-JAW, 2020 WL 1821010, at *3 (D. Me. Apr. 10, 2020). If the exhaustion provision is a mandatory claims processing rule, the Government's decision to decline to challenge Mr. Curtis' compliance might constitute a waiver, and the Court could proceed to the merits of Mr. Curtis' motion. If, on the other hand, the exhaustion provision is jurisdictional, the Court must conduct an inquiry into whether Mr. Curtis complied with the exhaustion requirement and whether his motion is properly before the Court.

   The Court once again declines to reach this question because it agrees with Mr. Curtis that he complied with the exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A) requires a defendant to bring a compassionate release motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." Mr. Curtis is subject to a federal sentence and where he serves that sentence is controlled by the BOP, but he is not currently located at a BOP facility. As Judge Bryant in the District of Connecticut noted, this places him in a Catch-22. *See United States v. Jepsen*, No. 3:19-cv-00073(VLB), 2020 WL 1640232, at *3 (D. Conn. Apr. 1, 2020). The statute contemplates that Mr. Curtis must request that the BOP file a motion on his behalf before filing his motion, yet simultaneously requires him to make that request to the warden of his facility—in this case, the warden of Strafford County Jail, a non-BOP facility. Mr. Curtis represents that before filing his motion, he reached out to the Superintendent of the Strafford County Department of Corrections (Strafford DOC) seeking a modification of his sentence under the First Step Act and was told that the Strafford DOC did not have the authority to grant this request. *Def.'s Mot.* at 5-6. Thus, Mr. Curtis exhausted administrative remedies to the fullest extent possible. *See United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *1 (E.D. Wash. Mar. 31, 2020). In these narrow circumstances, the Court determines that the exhaustion provision does not contemplate an individual in Mr. Curtis' position and that the Court is not barred

4

not relevant to [Mr. Curtis'] motion" and that his "situation does not fit into any of the first three enumerated grounds for extraordinary and compelling reasons under [United States Sentencing Guideline (U.S.S.G.) §] 1B1.13." *Id.* at 1.  Furthermore, in the Government's view, Mr. Curtis' "current situation is entirely of his own doing," and the "fact that his foiled plan" to "gain early release through commission of a federal felony while in custody. . . . resulted in the collateral consequences he now faces is hardly a basis for compassion." *Id.*

With regard to Mr. Curtis' contentions about his halfway house placement, the Government argues that "release to community confinement is not a matter of right." *Id.* at 1-2.  The Government contends that "[t]here is no basis here for compassionate release" and the Court should instead "fashion a sentence in docket number 2:19-cr-72-JAW that affords [Mr. Curtis] a reentry plan." *Id.* at 2.

### C.  Frank Curtis' Reply

Mr. Curtis begins by criticizing the BOP and the Maine Department of Corrections' responses to COVID-19.[3]  *Def.'s Reply* at 1-3.  He then states that he is not in BOP custody, but in Strafford County Jail in New Hampshire. *Id.* at 3.  He cites a decision by Judge McCafferty in the District of New Hampshire, *Gomes v.*

---

from reaching the merits of his motion. *See United States v. Arreola-Bretado*, No. 3:19-CR-03410-BTM, 2020 WL 2535049, at *2 (S.D. Cal. May 15, 2020) (holding that "exhaustion requirement does not bar the Court from considering this motion" when movant was not held in BOP custody and could not petition a BOP warden); *United States v. Ullings*, No. 1:10-cr-00406, 2020 WL 2394096, at *3 (N.D. Ga. May 12, 2020); *United States v. Morales*, No. 3:19-CR-00121 (KAD), 2020 WL 2097630, at *2 n.1 (D. Conn. May 1, 2020); *United States v. Hernandez*, No. 18 Cr. 834-04 (PAE), 2020 WL 1684062, at *2 (S.D.N.Y. Apr. 2, 2020).  The Court views the exhaustion hurdle as satisfied in the unusual circumstances of this case.

3       The Court is not clear why it should consider the Maine Department of Corrections' response to the COVID-19 pandemic in evaluating the risk at the Strafford County Jail in New Hampshire.

*United States Department of Homeland Security, Acting Secretary*, No. 20-cv-453-LM, 2020 WL 2514541 (D.N.H. May 14, 2020), for the proposition that the situation at Strafford County Jail is "precarious . . .." *Def.'s Reply* at 3. He then discusses the right to "reasonable safety and medical care" held by incarcerated individuals under the Eighth Amendment to the United States Constitution. *Id.* at 3-4.

Mr. Curtis next states that "[t]he Government's response is predicated on the fact Mr. Curtis (admittedly) does not face any special risk factors related to COVID-19;" however, he continues, "it is short-sighted and risky to fail to consider the risk factors for and dangers faced by *all* inmates because the Government's obligations to protect the health and safety extends to all inmates." *Id.* at 4 (emphasis in original). He again refers to the risk for incarcerated individuals at Strafford County Jail laid out in *Gomes* and cites similar language from other courts. *Id.* at 4-5.

Finally, Mr. Curtis turns to the community confinement issue, acknowledging that the Government is correct to assert that community confinement is not a right but stating that he "has served 94% of his statutory term on the sentence in this case, was already granted community confinement and is still eligible for it." *Id.* at 5. He states that the sentencing factors in 18 U.S.C. § 3553(a) support "this very minor reduction in sentence" because Mr. Curtis "reported from Florida to face" the charges for which he is incarcerated, "admitted responsibility to his role early in the case," and "was sentenced to 20 months more than even the Government recommended . . .." *Id.* Mr. Curtis notes that he will be on supervised release for three years once

6

released from custody and states that he would already have been released to community confinement if not for his new criminal conduct. *Id.* at 5-6.

## III. LEGAL STANDARD

18 U.S.C. § 3582(c)(1)(A)(i) states:

> The Court may not modify a term of imprisonment once it has been imposed except that . . . in any case . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . ..

Where such a motion is properly before the Court, as here, the Court must determine whether "extraordinary and compelling reasons warrant" the movant's release, considering in its determination "the factors set forth in section 3553(a)" and "applicable policy statements issued by the Sentencing Commission . . .." *Id.*

The United States Sentencing Commission issued a policy statement under U.S.S.G. § 1B1.13 for addressing compassionate release motions under § 3582(c)(1)(A).[4] The Guidelines note that the movant must meet the "requirements of subdivision (2) . . ..." U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 app. n.1 (U.S. SENTENCING COMM'N 2018). Subdivision 2 provides that the Court must determine

---

[4] The Court acknowledges that the Sentencing Commission promulgated this policy statement before the emergence of the COVID-19 pandemic and its provisions are therefore not directly related to the unique circumstances presented by a global pandemic. Nevertheless, the Court finds the policy provisions are a useful starting point for its analysis of the compassionate release motion.

7

that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g) . . .." *Id.* § 1B1.13(2).

Section 3142(g) sets forth the factors a court must consider before releasing a person pending trial and these standards are incorporated into the assessment of a request for compassionate release. They include (1) the nature and circumstances of the offense, specifically whether the crime is a crime of violence or involves a controlled substance; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). Regarding the history and characteristics of the person, the statute provides that the court must consider:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law . . ..

18 U.S.C. § 3142(g)(3)(A-B).

Once a court has made its dangerousness determination, § 1B1.13 provides that the court should determine whether "extraordinary and compelling reasons" exist to release the defendant. U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 app. n.1 (U.S. SENTENCING COMM'N 2018). The policy statement provides that

8

"extraordinary and compelling reasons" may exist under any of the following circumstances:

- (A) **Medical Condition of the Defendant.**—
    - (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
    - (ii) The defendant is—
        - (I) suffering from a serious physical or medical condition,
        - (II) suffering from a serious functional or cognitive impairment, or
        - (III) experiencing deteriorating physical or mental health because of the aging process,

        that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

- (B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

- (C) **Family Circumstances.**—
    - (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
    - (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

9

> (D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

*Id.* § 1B1.13 app. n.1(A-D). The policy statement further provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *Id.* § 1B1.13 app. n.2. Finally, the policy statement states that "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.* § 1B1.13 app. n.3.

Mr. Curtis, as the movant, has the burden of showing that he is entitled to a sentence reduction, and the Court "has 'broad discretion in deciding whether to grant or deny a motion for sentence reduction.'" *United States v. Britton*, No. 18-cr-108-LM, 2020 WL 2404969, at *2 (D.N.H. May 12, 2020) (quoting *United States v. Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *2 (D. Conn. Mar. 19, 2020)).

## IV.   DISCUSSION

This motion for compassionate release does not present a close question. Mr. Curtis acknowledges that he has no medical conditions that increase the danger he faces should he contract COVID-19, *Def.'s Mot.* at 7; *Def.'s Reply* at 4; nonetheless, he contends the Court should release him due to the danger posed by COVID-19—and more specifically, the danger posed by the virus to inmates at Strafford County Jail. As he is not at greater risk than the average inmate, the unstated premise of Mr. Curtis' argument is all inmates at Strafford County Jail should be released based only on the danger of COVID-19. To this point, the Court agrees with the Third

Circuit's dictum in *United States v. Raia*, 954 F.3d 594 (3d Cir. 2020): "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *Id.* at 597. Mr. Curtis asserts that COVID-19 has already come to Strafford County Jail, and the Court acknowledges and understands Mr. Curtis' legitimate fear. But absent credible assertions of medical conditions that make him vulnerable, the Court does not consider Mr. Curtis a candidate for compassionate release based on COVID-19 alone.

Mr. Curtis further argues that the Court should order his release because of the relatively short time remaining on his sentence and because he had previously been designated for community confinement. But Mr. Curtis' designation for community confinement occurred before his indictment in docket number 2:19-cr-00072-JAW, and there is no indication that the BOP would have made such a designation if that timeline had been reversed. Additionally, Mr. Curtis is still awaiting sentence in docket number 2:19-cr-00072-JAW for new criminal conduct that he committed while incarcerated. Mr. Curtis' new criminal conduct casts doubt on his ability to remain crime-free upon release and runs against his ability to sustain his burden of proof for compassionate release.

The Court has the authority to order Mr. Curtis' release under 18 U.S.C. § 3582(c)(1)(A) despite his failure to demonstrate medical conditions that make him vulnerable to COVID-19; however, after considering the United States Sentencing Commission's policy statement, the sentencing factors in 18 U.S.C. § 3553(a), and Mr.

Curtis' recent criminal conduct while incarcerated under 18 U.S.C. § 3142(g), the Court declines to exercise that authority here.

## V. CONCLUSION

The Court DENIES Frank Curtis' Emergency Motion for a Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 55).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 11th day of June, 2020